IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>31 Hopkins Plaza<br>Baltimore, MD 21201<br><br>        Plaintiff,<br><br>        v.<br><br>INOVA HOME HEALTH, LLC<br>8110 Gatehouse Rd, Ste 200 East Tower<br>Falls Church, VA 22042<br><br>ALTERNATE SOLUTIONS HEALTH NETWORK, LLC<br>1050 Forrer Blvd.,<br>Kettering, OH 45420<br><br>        Defendants | Civil Action No. _____<br><br>COMPLAINT<br><br>JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action under the Equal Pay Act of 1963 to restrain the unlawful payment of wages to employees of one sex at rates less than the rates paid to one or more employees of the opposite sex and to collect back wages due to employees as a result of such unlawful payments, and under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and to provide appropriate relief to persons harmed by such practices.  As alleged with greater particularity below, the United States Equal Employment Opportunity Commission alleges Defendants discriminated against Karen Kolb, Imani Newbill, Julie Torres and similarly situated females in the Post-Acute Care Coordinator position (the "aggrieved individuals") by paying them lower wages than it paid to one or more male counterparts for performing equal work, and that Defendants intentionally did so on

the basis of sex.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217, to enforce the requirements of the Equal Pay Act of 1963, codified as Section 6(d) of the FLSA, 29 U.S.C. § 206(d), and pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are being committed within the jurisdiction of the United States District Court for the Eastern District of Virginia.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission ("Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of, *inter alia*, the Equal Pay Act and Title VII, and is expressly authorized to bring this action by Sections 16(c) and 17 of the FLSA, 29 U.S.C. §§ 216(c) and 217, as amended by Section 1 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and Public Law 98-532 (1984), 98 Stat. 2705, and by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1), (3).

4. Inova Home Health, LLC ("IHH") is a Virginia corporation.

5. At all relevant times IHH has continuously been doing business in the Commonwealth of Virginia, with its principal offices in Falls Church, Virginia.

6. At all relevant times, IHH has continuously had at least 15 employees.

7. IHH has or had more than 100 employees for each working day in each of 20 or more calendar weeks for each of calendar years 2019 through present.

8. At all relevant times, IHH has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

9. At all relevant times, IHH has acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

10. At all relevant times, IHH has continuously employed employees engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(b), (i) and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i) and (j).

11. Alternate Solutions Health Network, LLC ("ASHN") is an Ohio corporation which does business under the trade name Alternate Solutions Health Network.

12. At all relevant times ASHN has continuously been doing business in the Commonwealth of Virginia.

13. At all relevant times ASHN has continuously had at least 15 employees.

14. ASHN has or had more than 100 employees for each working day in each of 20 or more calendar weeks for each of calendar years 2019 through present.

15. At all relevant times ASHN has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

16. At all relevant times ASHN has acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

17. At all relevant times ASHN has continuously employed employees engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(b), (i) and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i) and (j).

18. ASHN has an ownership interest in IHH.

19. IHH is owned by Inova HH Holdings, LLC, which in turn is owned by Inova Health Systems, LLC and Alternate Solutions Healthcare Northern Virginia, LLC.

20. Upon information and belief, Alternate Solutions Healthcare Northern Virginia, LLC is owned by ASHN.

21. Upon information and belief, one or more members of ASHN are also members of IHH.

22. Upon information and belief, one or more officers of ASHN are also officers of IHH.

23. Upon information and belief, David Ganzsarto and Tessie Ganzsarto are the Co-Chief Executive Officers of both ASHN and IHH.

24. Upon information and belief, Everett Neal, Todd Higgins, and Robin Benoit are, respectively, the President, Chief Financial Officer and Chief Human Resources Officer for both ASHN and IHH.

25. ASHN has centralized control over and performs labor relations and human resources functions for persons working in the Post-Acute Care Coordinator position at IHH (hereinafter "PACC" or "PACC position").

26. ASHN determines the policies governing recruitment, selection and hiring of PACCs.

27. ASHN recruits PACC candidates, extends offers for hire, and conducts new PACC onboarding and orientation.

28. ASHN determines personnel policies applicable to PACCs, including for paid and unpaid leave, attendance, benefits, discipline and other terms and conditions of employment.

29. ASHN's human resources department must be consulted for any discipline or corrective action issued to PACCs, as well as for their transfer or promotion.

30. ASHN determines and formulates the training requirements and programs/modules for the PACC position.

31. ASHN developed the performance appraisal forms and component metrics for the PACC position.

32. ASHN maintains and administers the ServiceNow platform used to provide human resources services to PACCs.

33. ASHN maintains employment information, professional credentials and licensing, and personnel records of, and administers the Workday HRIS system for, persons in the PACC position.

34. ASHN determines the compensation model, pay grade and pay range or band for the PACC position.

35. ASHN processes payroll for the PACC position.

36. ASHN established and administers the bonus program applicable to the PACC position, with bonus amounts being calculated as a percentage of base salary.

37. The bonus percentage applicable to each PACC's base salary is determined based on: 1) company-wide performance; 2) the performance of the unit/department encompassing all PACCs; and 3) the respective PACC's tenure with ASHN.

38. ASHN is responsible for addressing and resolving complaints of discrimination from PACCs.

39. ASHN responded to and resolved the internal complaint of pay discrimination and request for pay equalization made by Ms. Kolb.

40. At all relevant times IHH and ASHN (collectively referred to hereinafter as "Defendant") have and continue to constitute the employer (including the joint, single and/or integrated employer) of the aggrieved individuals and all other persons employed in the PACC position at IHH.

## ADMINISTRATIVE PROCEDURES

41. All conditions precedent to the institution of this lawsuit have been fulfilled.

42. More than thirty days prior to the institution of this lawsuit, Ms. Kolb filed a Charge of Discrimination with the EEOC alleging *inter alia* pay discrimination in violation of Title VII and the Equal Pay Act by Defendant.

43. Following the EEOC's investigative process, the agency issued a Letter of Determination dated November 25, 2022, notifying Defendant that EEOC had found Defendant subjected "[Ms. Kolb] and a class of female employees working in the PACC position to pay discrimination on the basis of sex" in violation of Title VII and the Equal Pay Act.

44. EEOC's Letter of Determination invited Defendant to join with EEOC in informal methods of conciliation to endeavor to resolve the discrimination found to have occurred.

45. EEOC provided Defendant with proposed terms for settlement and engaged in communications with Defendant concerning settlement.

46. EEOC was unable to secure a conciliation agreement on terms acceptable to the Commission.

47. EEOC issued Defendant a Notice of Conciliation Failure dated January 13, 2023.

## STATEMENT OF CLAIMS

48. Defendant is a healthcare services company that partners with healthcare systems to provide *inter alia* coordination and/or provision of home health services to the systems' patients.

49. Defendant provides post-acute care coordination services to patients of Inova Health System at the system's five hospital locations in northern Virginia (the "hospital locations").

50. Defendant's care coordination services are provided by PACCs at each hospital location.

51. Defendant utilizes the same position name and job description for PACCs working at all hospital locations and units.

52. PACCs at all hospital locations and units perform the same core duties for patients in the course of which they utilize the same work-related systems and processes.

53. Defendant has and does assign PACCs to multiple hospital locations and/or units.

54. Defendant has and does transfer or reassign PACCs among hospital locations and units.

55. PACCs at all hospital locations report to, and are subject to centralized management and supervision by, a single PACC Manager.

56. Defendant organizes PACCs at all hospital locations into the same consolidated "Care Integration" unit or department, including for purposes of budgeting, departmental performance, job scoring and compensation range, and bonus attainment.

57. PACCs at all hospital locations and units participate in centralized Care Integration department meetings and weekly meetings or "huddles."

58. The minimum qualifications for the PACC position are an associates' degree in nursing with active licensure as a nurse in the state of services, and two years' experience - preferably in home healthcare and/or care coordination.

59. PACCs assist patients and hospital staff with the transition of care when a patient is discharged from the hospital and requires continuing at home health services and/or equipment. The core duties of the PACC position ("PACC duties") include:

   a. Identify patients who are likely in need of home healthcare services;

   b. Determine patient's eligibility for home healthcare and review insurance information;

   c. Coordinate with hospital staff in multidisciplinary rounds and patient discharge planning process;

   d. Review and/or confirm patient's medical records and treating medical staffs' recommendations and orders for post-discharge home healthcare;

   e. Coordinate with patient to educate them about home healthcare services ordered by treating medical staff and options for services and providers;

   f. Find available home healthcare agencies that will accept the patient and can provide services matching patient's needs and schedule using the CarePort system;

   g. Once patient is matched to a home healthcare agency, coordinate delivery of all necessary patient, medical, insurance and other information to the agency, including through the EPIC system;

   h. Coordinate ordering and delivery of all necessary home healthcare equipment directed by the treating medical staff and/or required by the patient;

   i. Coordinate other ancillary home health services;

    j. Coordinate with hospital staff and ensure patient is ready for discharge and home healthcare needs are met or addressed upon discharge;

    k. Participate in care conferences and coordination of case management; and

    l. Function as a resource nurse/social worker for patients.

  60. Karen Kolb, Imani Newbill, Julie Torres and other aggrieved individuals, females, were qualified for and hired by Defendant into the PACC position and were paid less than one or more male PACCs to perform PACC duties.

  61. Karen Kolb graduated from nursing school with a degree in nursing in 2011.

  62. Prior to attending nursing school, Ms. Kolb worked in patient care coordination and discharge planning for hospitals and skilled care facilities for approximately fifteen years.

  63. Following nursing school Ms. Kolb worked as a nurse or in patient care coordination for approximately eight years until she was hired by Defendant.

  64. Defendant hired Ms. Kolb as a PACC in or about May 2019 at a salary of approximately $80,000.

  65. In or about June 2020 Defendant raised Ms. Kolb's salary to approximately $82,000.

  66. In or about June 2021 Defendant raised Ms. Kolb's salary to approximately $83,640.

  67. In or about June 2022 Defendant raised Ms. Kolb's salary to approximately $85,000.

  68. During her employment as a PACC, Ms. Kolb successfully performed all PACC duties and received positive performance reviews from Defendant.

  69. Imani Newbill graduated from nursing school with a degree in nursing in 2017.

  70. Prior to attending nursing school, Ms. Newbill worked in the medical field and performed home healthcare as a home health aide and later Certified Nursing Assistant for approximately twelve years.

71. Prior to being hired by Defendant, Ms. Newbill worked as a nurse for the George Washington University Hospital.

72. Defendant hired Ms. Newbill as a PACC in or about May 2021 at a starting salary of approximately $81,120.

73. In or about May 2022, Defendant raised Ms. Newbill's salary to approximately $83,554.

74. During her employment as a PACC, Ms. Newbill successfully performed all PACC duties and received positive performance reviews from Defendant.

75. Defendant continues to employ Ms. Newbill as a PACC.

76. Julie Torres graduated from nursing school with a nursing degree in 2006.

77. Prior to nursing school Ms. Torres worked in the medical field as an Emergency Medical Technician.

78. Following nursing school Ms. Torres worked as a nurse for approximately thirteen years until she was hired by Defendant.

79. Defendant hired Ms. Torres as a PACC in or about May 2019 at a starting salary of approximately $79,000.

80. In or about May 2020 Defendant raised Ms. Torres' salary to approximately $81,370.

81. In or about May 2021 Defendant raised Ms. Torres' salary to approximately $82,998.

82. In or about May 2022 Defendant raised Ms. Torres' salary to approximately $85,488.

83. During her employment as a PACC, Ms. Torres successfully performed all PACC duties and received positive performance reviews from Defendant.

84. Defendant continues to employ Torres as a PACC.

85. Charles Palting, male, graduated from nursing school with a degree in nursing in 2019.

86. Following nursing school Mr. Palting worked as a nurse for approximately two years until he was hired by Defendant.

87. Mr. Palting had no relevant job experience prior to attending nursing school.

88. Defendant hired Mr. Palting as a PACC in or about December 2021 at a starting salary of approximately $89,500.

89. Upon information and belief, in or about December 2022 Defendant raised Mr. Palting's salary to over $92,000.

90. Defendant continues to employ Mr. Palting as a PACC.

91. Edward Crespo, male, graduated from nursing school with a degree in nursing in 2019.

92. Following nursing school Mr. Crespo worked as a nurse for approximately two years until he was hired by Defendant.

93. Mr. Crespo had no relevant job experience prior to attending nursing school.

94. Defendant hired Mr. Crespo as a PACC in or about March 2022 at a starting salary of approximately $87,000.

95. Defendant continues to employ Mr. Crespo as a PACC.

96. In or about March 2022 Ms. Kolb complained to Defendant, via IHH Regional V.P. of Care Integration Rachelle Dornan, about the pay disparity with respect to recently hired PACCs Mr. Crespo and Mr. Palting and sought pay equalization.

97. In or about March 2022 Ms. Kolb also warned Defendant that she believed it was violating equal pay laws and that she would seek employment elsewhere if the pay disparity were not corrected.

98. Ms. Dornan referred Ms. Kolb's complaint to ASHN Corporate V.P. of Care Integration Michael Craig for resolution.

99. Mr. Craig conferred with ASHN Human Resources Director Emily Mowery, and Mr. Craig and Ms. Mowery determined that Ms. Kolb's salary would not be adjusted.

100. On or about April 5, 2022, Mr. Craig notified Ms. Kolb that Defendant would not adjust her salary in response to her complaint.

101. On or about August 9, 2022, Ms. Kolb submitted her letter of resignation to Defendant, after which Defendant made no efforts to revisit the pay disparity or retain Ms. Kolb.

102. Ms. Kolb's last day of employment with Defendant was in or about late August 2022.

## Count 1 – Title VII Claims

103. EEOC hereby repeats and incorporates by reference the foregoing allegations.

104. Since at least 2020, Defendant has engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) by discriminating against the aggrieved individuals with respect to their compensation because of their sex.

105. The effect of the practices complained of above has been to deprive the aggrieved individuals of equal employment opportunities and to otherwise adversely affect their status as employees because of their sex.

106. The unlawful employment practices complained of above were and are intentional.

107. The unlawful employment practices complained of above were and are done with malice or reckless indifference to the federally protected rights of the aggrieved individuals.

## Count II – Equal Pay Act Claims

108. EEOC hereby repeats and incorporates by reference the foregoing allegations.

109. Since at least 2020, Defendant has violated Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) and 215(a)(2) by paying the aggrieved individuals lower wages than those paid to one or more male colleagues for performing equal work in the PACC position.

110. As a result of the acts complained of above, Defendant unlawfully has withheld and is continuing to withhold the payment of wages due to the aggrieved individuals.

111. The unlawful practices complained of above were and are willful.

## PRAYER FOR RELIEF

Wherefore, the Commission requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with Defendant, from discriminating against females with respect to their wages or compensation and from paying female employees lower wages or compensation than one or more male comparators for performing equal work.

B. Order Defendant to institute and carry out policies, practices and programs that provide equal wages and compensation for women and eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole the aggrieved individuals by providing appropriate backpay and lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Grant a judgment requiring Defendant to pay appropriate back wages in amounts to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to the aggrieved individuals, whose wages were and are being unlawfully withheld as a result of the acts complained of above.

E. Order Defendant to make whole the aggrieved individuals by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

F. Order Defendant to make whole the aggrieved individuals by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including emotional and mental anguish, pain and suffering, stress and anxiety, loss of enjoyment of life, humiliation and frustration in amounts to be determined at trial.

G. Order Defendant to pay the aggrieved individuals punitive damages for the malicious and/or reckless conduct described above, in amount to be determined at trial.

H. Grant such further relief as this Court deems necessary and proper in the public interest.

I. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

U.S. EEOC

GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

DEBRA M. LAWRENCE
Regional Attorney

/s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Assistant Regional Attorney
Va. Bar ID 94043
U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Washington Field Office
131 M. St., NE
Suite 4NW02F
Washington, DC 20507
Phone: (202) 631-4287

Fax: (202) 827-2349

THOMAS D. RETHAGE
Senior Trial Attorney
Pa. Bar. No. 203524
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Philadelphia District Office
801 Market St., Suite 1000
Philadelphia, PA 19107
thomas.rethage@eeoc.gov
Phone: 267-589-9756